UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| STEPHANIE L. LANE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:17-CV-02393-ERW |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Stephanie Lane ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 15), Defendant has filed a brief in support of the Answer (ECF 22), and Plaintiff filed a reply brief (ECF 23).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB and SSI under Titles II and XVI of the Social Security Act on March 28, 2014 (Tr. 19). Plaintiff was initially denied relief on April 24, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on June 20, 2014 (Tr. 93-96, 98-99). After a hearing, in a decision dated July 28, 2016, the ALJ found Plaintiff was not disabled (Tr. 19-32). Plaintiff filed a *Request for Review of Hearing Decision* on August 2, 2016 (Tr. 148). On July 13, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-3). Plaintiff appealed to the United States District Court for the Eastern District

of Missouri on September 12, 2017 (ECF 1). The ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirement of the Social Security Act through September 30, 2014, and Plaintiff has not engaged in substantial gainful activity since February 28, 2009, the alleged onset of her disability (Tr. 21). The ALJ found Plaintiff has the severe impairments of obesity and degenerative disc disease with fusion (Tr. 21). Additionally, the ALJ found Plaintiff has non-severe impairments including diabetes, hypertension, headaches, and neurogenic syncope[1] which do not have more than a minimal effect on Plaintiff's ability to work (Tr. 21). These non-severe impairments were considered by the ALJ when determining Plaintiff's Residual Functioning Capacity ("RFC") (Tr. 21-22). The ALJ found no impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22).

The ALJ conducted a hearing with Plaintiff, her counsel, and a vocational expert on February 17, 2016 (Tr. 39). At the beginning of the hearing, Plaintiff's counsel indicated there were additional records from Dr. Kevin Rutz and Mercy Medical Center which were unlikely to add anything to the proceeding, and the ALJ decided the record would be held open for thirty days to allow for the receipt and consideration of those records (Tr. 41).

In her testimony before the ALJ on February 17, 2016, Plaintiff testified she had worked as a designer and lead engineer at Children's Factory Inc. for approximately 14 years, with her employment ending there in 2009 (Tr. 46). Plaintiff then testified she was terminated for "job abandonment" which Plaintiff attributed to absences related to her pregnancy (Tr. 46-47).

---

[1] This is a condition where Plaintiff experiences a fall in systemic blood pressure.

Sometime around 2009, Plaintiff received unemployment benefits and cashed out her existing retirement account to help pay medical bills (Tr. 47-49).

Plaintiff testified she had back surgery in 2004 to fuse C6 and C7 in her spine, and then had an additional surgery to correct a disc protrusion[2] below her earlier fusion, but the surgery "didn't fix it[, i]t just moved it to another location" (Tr. 46, 53-54). In addition to surgery, Plaintiff takes medication for migraine headaches and visits a chiropractor and massage therapist to help ease her pain in the short-term (Tr. 57-58, 63). She also performs traction[3] approximately three times a day for 10 minutes to help with pain relief, usually once in the morning, once in the afternoon, and once before bed (Tr. 62-63). Plaintiff also testified she has seen her chiropractor and a massage therapist since she was 19 years (Tr. 58-59). Further, Plaintiff possesses a driver's license which does not contain any restrictions (Tr. 49-50).

Plaintiff testified she lives with her husband, three school-aged children, who are eighteen, six, and four, as well as two dogs (Tr. 42). Her six year old child has been diagnosed with ADHD (Tr. 43). She further testified her husband is a utility grade three worker at a factory making approximately $15 an hour, plus overtime, working a fixed shift from 11 P.M. to 7 A.M. (Tr. 43, 49). Plaintiff testified her husband has to carry items up and down the stairs such as large loads of laundry, because her pain prevents her from being able to do so (Tr. 45). She testified her parents live next door and often assist her with tasks such as cooking, because she is only able to prepare small, simple meals on her own (Tr. 50). Plaintiff noted she is only able to wash a small amount of dishes in short 10-15 minute increments and requires someone else to wash the pots, pans, and other "awkward" dishes (Tr. 51). Trips to the grocery store require her

---

[2] A disc protrusion occurs when a disc becomes compressed and protrudes from its natural space in the spinal column.
[3] Traction is a form of stretching which can be accomplished either by using a weighted bag hung over a door or by lying down and using a device with an air chamber (Tr. 62).

3

husband's assistance for anything more than small items, because she is unable to push the cart (Tr. 45). When it comes to taking care of her children, Plaintiff testified she is unable to pick up her 4 year old, who is 42 pounds, and someone else has to give the children their baths, because she is unable to bend down (Tr. 52). Plaintiff noted even simple activities, such as watching TV, require her to take a break after about 30 minutes to move around (Tr. 61).

The vocational expert, Jennifer DeShay, testified Plaintiff's prior job is classified as an Industrial Designer under the Dictionary of Occupational Titles (Tr. 67). Plaintiff's counsel contends Plaintiff's physical issues limit her to simple, routine tasks, and require unscheduled disruptions of her work schedule (Tr. 70). The vocational expert testified the defendant cannot perform any of her past work; however, she is able to work in positions classified as "light"[4] including as a counter clerk-photo, furniture rental consultant, and usher (Tr. 68-69). The vocational expert also noted those positions do not have a sit/stand option when combined with the need to be classified as "light" (Tr. 69-70).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to preform light work except she is limited to frequently reaching, handling, and fingering (Tr. 22). The ALJ further concluded Plaintiff is unable to perform any past relevant work[5] (Tr. 30). The ALJ found there are jobs which exist in significant numbers in the national economy which Plaintiff can perform, including counter clerk, furniture real estate consultant, or usher (Tr. 31).

The ALJ found no impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22). Plaintiff appeals arguing the ALJ failed to consider Plaintiff's need for leave to attend

---

[4] Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567.
[5] Plaintiff previously worked at Children's Factory, Inc. for approximately 14 years, ending in 2009 (Tr. 46-47).

4

appointments and excessive breaks for stretching when determining Plaintiff's RFC, and the ALJ failed to properly consider medical opinion evidence from Plaintiff's chiropractor and massage therapist (ECF 15 at 2).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy which can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two main issues. First, Plaintiff alleges the ALJ erred by failing to include alleged limitations caused by Plaintiff's need

7

to take additional breaks during the work day and her need to take time off to attend chiropractic and massage therapist appointments when making her RFC determination (ECF 15 at 2). Second, Plaintiff alleges the ALJ erred by failing to properly consider medical opinion evidence from Plaintiff's chiropractor and massage therapist (ECF 15 at 2). For the following reasons, the Court finds substantial evidence supports both the ALJ's findings regarding Plaintiff's RFC determination and the consideration of opinion evidence by Plaintiff's chiropractor and massage therapist.

### A. Residual Functional Capacity Determination

Plaintiff alleges the ALJ erred by failing to consider Plaintiff's attendance limitations stemming from her need to take additional breaks to perform her stretching exercises and her need to take excessive time off for medical appointments when determining her RFC (ECF 15 at 2).

Residual Functional Capacity represents the most the Plaintiff can do despite her medical impairments and is based on all relevant evidence from the record. 20 C.F.R. § 404.1545(a)(1), 416.945 (a)(1). The ALJ's RFC determinations are made by considering Plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work" as well as any other lesser impairments which result in limitations and restrictions on Plaintiff's ability to work. 20 C.F.R. § 404.1545(a)(4). Furthermore, the total limiting effects of all impairments, including those which are not severe, are considered when the ALJ makes an RFC determination. 20 C.F.R. § 404.1545(e). Plaintiff is "responsible for providing the evidence [the ALJ] will use to make a finding" of Plaintiff's RFC. 20 C.F.R. § 404.1545(a)(3).

### i. Traction Exercises

Plaintiff argues her need to perform traction exercises to relieve her neck pain three times a day, along with occasional additional sessions, is not compatible with an employer's normal break schedules (ECF 15 at 4). Here, the ALJ specifically questioned Plaintiff during her hearing about her stretching to relieve pain (Tr. 62). Plaintiff testified she would usually stretch three times a day for about ten minutes using traction exercises (Tr. 62-63). Plaintiff agreed with the ALJ's assumption she generally completed the stretches upon waking up, once in the afternoon, and once before going to bed, with the occasional need for an extra session throughout the day (Tr. 62-63). During the hearing, the ALJ noted there did not appear to be a reason Plaintiff could not perform the needed stretching during her scheduled breaks (Tr. 71).

In her decision, the ALJ noted neck pain, numbness, and tingling were not symptoms supported by objective medical evidence and those symptoms were inconsistent with the record (Tr. 28). The ALJ noted the alleged limitations were inconstant with the testimony Plaintiff is very active with her two kids, does cleaning and laundry, goes outside daily, drives a car, shops once a week for two hours for food, pays bills, uses a checkbook, reads daily, and bowls in a league once a week (Tr. 30). Further, the ALJ noted Plaintiff's inconsistencies in her abilities and testimony regarding pain, numbness, and tingling were taken into consideration in the ALJ's decision not to consider the alleged need for breaks, when making her RFC determination (Tr. 31). Thus, the ALJ properly considered the total limiting effects of Plaintiff's impairments in light of the inconsistencies of Plaintiff's alleged limitations, and the ALJ's RFC determination is supported by substantial evidence.

### ii. Missing Work for Appointments

Plaintiff argues her frequent appointments for chiropractic and massage therapy treatment are also incompatible with employment, and the ALJ failed to take into account the number of

times Plaintiff must visit those providers to manager her condition, when determining her RFC (ECF 15 at 4-5). However, Plaintiff clearly stated she had been attending such appointments since she was 19 years old for the same treatment (Tr. 58-59). These appointments occurred regularly, well before the date of onset of her alleged disability, without affecting her ability to obtain and maintain employment (Tr. 58-59). While the ALJ did not explicitly discuss the need for appointments in her RFC determination, there was no need for such consideration, where the appointments clearly had not affected Plaintiff before the alleged onset of her disability.

Employment can be precluded by impairment-related frequent absences. *Maresh v. Barnhart*, 438 F.3d 897, 901 (8th Cir. 2006). Plaintiff cites to *Maresh* in support of her argument the ALJ erred, however, *Maresh* is centered on whether the claimant met a Social Security Listing for mental impairment. 438 F.3d at 901. Whether or not a Listing applies is not at issue here; the ALJ determined Plaintiff did not meet any listed impairment and Plaintiff has not contested that determination (Tr. 22).

Plaintiff further cites *Ross* as support for her assertion the scheduling issues resulting from her pain, render her unable to meet the attendance requirements for employment (ECF 15 at 5). An inability to maintain the attendance requirements of full-time competitive employment constitutes disability. *Ross v. Apfel*, 218 F.3d 844, 849-50 (8th Cir. 2000). While the *Ross* Court did find the ALJ had not properly considered the debilitating nature of the claimants pain, the claimant in *Ross* was incapacitated an average of two days a week. *Ross,* 218 F.3d at 849. There is nothing in the record which indicates Plaintiff's pain incapacitates her with any frequency rising to the level of the claimant in *Ross*.

Finally, Plaintiff asserts the Program Operations Manual for ALJ's regarding the consideration of mental factors necessary for work, support her argument (ECF 15 at 6). The

Program Operations Manual does list a claimant's ability to avoid excessive absences as critical for performing unskilled work. POMS DI 25020.010(B)(3)(e). Importantly though, this ability is not mandatory. Further, the Manual makes clear, a failure to meet a medical listing under the policy is not dispositive, and thus, not controlling in evaluating the ALJ's determination. POMS DI 25020.010(A)(2)(b).

The ALJ properly considered the total limiting effects of Plaintiff's impairments, discounting alleged limitations, stemming from a need for frequent appointments by finding inconsistencies in the record. Therefore, Plaintiff's argument the ALJ improperly failed to consider limitations in her RFC determination fails, as the ALJ's determination was supported by substantial evidence.

### B. Consideration of Opinion Testimony

Plaintiff argues the ALJ improperly failed to consider opinion statements provided by Plaintiff's chiropractor and massage therapist (ECF 15 at 2). Social Security Adminsitration regulations require the ALJ to consider evidence from Plaintiff's chiropractor and massage therapist as evidence from "other sources" as they do not qualify as "acceptable medical sources." 20 CFR §§ 404.1513, 416.913 (2013). As Plaintiff notes in her brief, the ALJ is permitted to discount such evidence in her RFC determination, if it is inconsistent with the evidence in the record. *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 886-67 (8th Cir. 2006)).

The ALJ noted Erika Brown, Plaintiff's massage therapist, completed a Medical Source Statement (Tr. 26). The statement detailed constant numbness in both hands and observed Plaintiff's objective indications of pain were muscle spasms, precluding her from full-time work (Tr. 26). However, Ms. Brown also stated Plaintiff's ability to walk was unlimited, she could

11

balance and walk unassisted, and she did not need to lie down or take a nap during the eight-hour work day (Tr. 26).

The ALJ further noted Dr. Andrew Burns, Plaintiff's chiropractor, completed a Medical Source Statement (Tr. 27). He diagnosed cervical/brachial syndrome, cervical arthritis, thoracalgia, and lumbar dysfunction (Tr. 27). Dr. Burns concluded Plaintiff's pain precluded her from full-time work because she would require more than three breaks during a normal eight-hour work day (Tr. 27). The ALJ noted this assessment was inconsistent with other medical evidence, including Ms. Brown's assessment (Tr. 27). Further, the ALJ correctly pointed out the limitations suggested by Ms. Brown and Dr. Burns are inconsistent with the record as a whole, which shows Plaintiff was routinely without strong narcotic pain medication, was active with her two young children, and able to clean her attic (Tr. 27). Finally, the ALJ noted there are no other objective medical findings in the record which support the claim Plaintiff needs to lie down or nap during the day, or she could not walk for more than one hour during an eight-hour work day (Tr. 27).

Plaintiff points to a statement made by the ALJ at the hearing, where the ALJ stated opinions from chiropractors "don't count anyway" as evidence of the ALJ's failure to properly consider the statements from Dr. Burns and Ms. Brown (ECF 15 at 8). Defendants concede this is an inaccurate statement of the agency's position (ECF 22 at 13). However, the ALJ noted in her opinion observations from other sources, particularly chiropractors, may be helpful in understanding how impairment affects the ability to work (Tr. 27). The ALJ's statements in her opinion regarding Dr. Burns and Ms. Brown's medical opinions show she did not entirely discount the evidence from Plaintiff's massage therapist and chiropractor. Therefore, the ALJ properly analyzed the chiropractor and massage therapists' opinions along with the record as a

whole, as required by *Lawson* before discounting them. Substantial evidence supports the ALJ's determination to discount the opinion testimony of Plaintiff's chiropractor and massage therapist.

V.     **CONCLUSION**

The ALJ properly considered Plaintiff's limitations regarding her need for time off and additional breaks to attend appointments and stretch when making an RFC determination. The ALJ also properly noted inconsistencies in the record which permitted her to discount evidence from Plaintiff's chiropractor and massage therapist. Thus, the ALJ's decision was supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 27th day of February, 2019.

*E. Richard Webber*

          **E. RICHARD WEBBER**
          **SENIOR UNITED STATES DISTRICT JUDGE**